UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br> vs.<br><br>ALEXANDER "ALEX" WHITE PLUME, PERCY WHITE PLUME, their agents, servants, assigns, attorneys, and all others acting in concert with the named Defendants,<br><br>     Defendants. | CIV. 02-5071-JLV<br><br>ORDER |

## INTRODUCTION

  Defendant Alexander "Alex" White Plume ("defendant") filed a motion and supporting brief pursuant to Fed. R. Civ. P. 60(b) seeking relief from the permanent injunction entered on December 30, 2004. (Dockets 124 & 125). The United States resists the motion. (Docket 136). For the reasons stated below, the defendant's motion is granted.

## ANALYSIS

  To properly analyze defendant's motion it is necessary to review the history of the relationship between the United States and Mr. White Plume. On August 9, 2002, the United States filed a complaint against Mr. White Plume and his brother, Percy White Plume, seeking a declaratory judgment and injunctive relief. (Docket 1). The government alleged the defendants were "manufacturing and distributing marijuana, in violation of 21 U.S.C.

§ 856(a)(1)." Id. ¶ 1. The specific claim of the government was that the defendants Alexander White Plume and Percy White Plume as "enrolled members of the Oglala Sioux Tribe . . . in concert with others, have manufactured, planted, cultivated and grown marijuana on three successive crop years beginning with the 2000 crop year . . . . [and] have utilized federal trust lands for the manufacture, distribution and possession with the intent to distribute . . . marijuana." Id. ¶ 17. The United States sought a permanent injunction enjoining the defendants from violating 21 U.S.C. §§ 841(a)(1) and 856(a)(1). Id. at pp. 9-10.

The defendants denied the government's allegations and filed a counterclaim. (Docket 19). In their answer the defendants asserted, among other defenses, they were "cultivat[ing] industrial hemp exclusively for industrial or horticultural purposes" and were "exempt from [the] application of the Controlled Substances Act[1] . . . ." Id. ¶ 7. They alleged "industrial hemp . . . cannot be properly classified as a Schedule I substance under 21 U.S.C. [§] 812, since it contains no or insufficient THC[2] to create a hallucinogenic 'high' and therefore cannot have a high or any substantive potential for abuse." Id. ¶ 8(a). The defendants sought declaratory and injunctive relief to prevent the

---

[1] 21 U.S.C. § 801, *et seq.*

[2] "THC" is the abbreviation for "tetrahydrocannabinols." 21 U.S.C. § 812(c)(Schedule I)(c)(17).

government from seizing and destroying their industrial hemp crop.  Id. at pp. 6-7.

On December 28, 2004, the court filed a memorandum opinion granting plaintiff's motion for summary judgment.[3]  (Docket 98).  The court analyzed plaintiff's motion for injunctive relief utilizing the Dataphase[4] factors.  Id. at p. 5.  Those factors are:

(1) the threat of irreparable harm to the movant;

(2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant;

(3) the probability that movant will succeed on the merits; and

(4) the public interest.

Id. (citing Dataphase, 640 F.2d at 114).

Considering the first prong of the Dataphase test, the court found that "[t]he Controlled Substances Act ["CSA"] prohibits the cultivation of marijuana without a valid DEA [Drug Enforcement Agency] registration.[5]  Hemp is included in the definition of marijuana.  Defendants do not possess a valid DEA

---

[3]The Honorable Richard H. Battey, retired.

[4]Dataphase Systems, Inc., v. CL Systems, Inc., 640 F.2d 109,114 (8th Cir. 1981).

[5]The CSA provides a method by which an individual may legally manufacture or distribute a controlled substance.  See 21 U.S.C. § 822(a)(1) ("Every person who manufactures or distributes any controlled substance or list I chemical, or who proposes to engage in the manufacture or distribution of any controlled substance or list I chemical, shall obtain annually a registration issued by the Attorney General . . . .").

registration, nor are they exempt from the requirement of such registration." Id. at p. 6. Based on the CSA and the defendants' lack of a DEA permit, the court found the United States "need not show irreparable harm under the first prong of the Dataphase test." Id.

In analyzing the second prong of the test, the court found that "[i]f a permanent injunction were granted, it would simply mean that defendants would have to obtain a valid DEA registration in order to grow their hemp crop. Thus, the harm of violating the statute outweighs the injury inflicted on defendants." Id. Because injunctive relief[6] had been entered earlier, the third Dataphase factor was satisfied as the court had "already determined that the statute has been violated, [and] the likelihood of success weighs in favor of the government." Id.

Addressing the fourth Dataphase factor, the public interest, the court found that "[h]emp is a variety of Cannabis sativa L." and is subject to the CSA. Id. at p. 7. "[S]ince the hemp form and the drug form of marijuana are both

---

[6]A temporary restraining order was entered on August 13, 2002. (Docket 15). In the memorandum opinion, the district court referred to a preliminary injunction. (Docket 98 at p. 6). The court cannot find in CM/ECF that a preliminary injunction was issued, but assumes the court meant to reference its earlier temporary restraining order. After issuing the temporary restraining order, the court scheduled a hearing on the government's request for preliminary and permanent injunctive relief. (Docket 18). Prior to the scheduled hearing, the government filed a motion for summary judgment (Docket 27) and there was an appeal to the United States Court of Appeals for the Eighth Circuit on an issue unrelated to the present motion. Following resolution of the appeal, the court directed the parties to respond to the parties' cross-motions for summary judgment. (Dockets 75 & 89).

Cannabis sativa L., and differentiate only chemically, it is not irrational that hemp would be included with marijuana as a Schedule I drug." Id. at p. 10. The court found "that it is in the public's best interest, and that it is their desire, to tightly regulate the cultivation of cannabis." Id. at p. 7.

On December 30, 2004, the court filed an amended judgment permanently enjoining Alexander White Plume and other defendants "from cultivating Cannabis sativa L., otherwise known as marijuana or hemp, without a valid Drug Enforcement Administration registration." (Docket 101). On May 17, 2006, the Eighth Circuit affirmed the decision of the district court. United States v. White Plume, 447 F.3d 1067 (8th Cir. 2006); see also Docket 117-2.

On July 30, 2015, Alexander White Plume filed a motion pursuant to Rule 60(b) seeking to vacate the permanent injunction.[7] (Docket 124). Federal Rule of Civil Procedure 60 provides grounds for relief from a final judgment or order.

> On motion and just terms, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud . . . , misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;

---

[7]While the permanent injunction enjoined a number of defendants, Mr. White Plume seeks relief only for himself. (Docket 125 at p. 3 n.4).

> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).  "A motion under Rule 60(b) must be made within a reasonable time . . . . "  Fed. R. Civ. P. 60(c)(1).  A district court's decision on a motion for reconsideration rests within its discretion.  <u>Hagerman v. Yukon Energy Corp.</u>, 839 F.2d 407, 413 (8th Cir. 1988).

Mr. White Plume argues that "[i]n the decade since this decision, state and federal action has significantly altered the legal landscape surrounding Cannabis."  (Docket 125 at p. 1).

> To date, twenty-two states have legalized non-drug industrial hemp. Moved, in part, by this sea change, the Department of Justice has issued policy guidance memoranda introducing an eight-factor assessment for federal prosecutors that adds discretion to their enforcement of the Controlled Substances Act ("CSA").  Further, in the 2014 Farm Bill,[8] Congress recognized a distinction between marijuana and industrial hemp, creating for the first time an exception to the CSA allowing for the growth, cultivation, and study of industrial hemp in certain circumstances.  Because industrial hemp stalks and seeds are often used to make textiles, foods, papers, body care products, detergents, plastics, biofuels, and building materials, the crop has significant economic and environmental value.  Under the new Farm Bill paradigm, individual farmers, universities, and state agriculture departments are now able to explore this potential industrial hemp farming bounty.

<u>Id.</u> at p. 1-2.  Mr. White Plume asserts that "[g]iven these changes, the injunction . . . is outdated at best. . . . Now, it is time for this Court to recognize

---

[8]The Agricultural Act of 2014, Pub. L. 113-79, Feb. 7, 2014.

these changes and lift the injunction put in place . . . more than ten years ago." Id. at pp. 2-3.

The United States resists Mr. White Plume's motion.  (Docket 136).  The government argues Mr. White Plume cannot satisfy the "high threshold showing" required by Rule 60.  Id. at p. 2.  It claims "White Plume has not met his burden of proving exceptional circumstances exist that justify the dissolution of the permanent injunction.  Rather, White Plume essentially seeks license, through this motion, to violate the CSA."  Id. at p. 3.  The government argues "the legal conclusion that the CSA prohibits the cultivation of hemp or industrial hemp on the Pine Ridge Indian Reservation is not properly challenged under Rule 60(b)(5).  Moreover, White Plume does not fall within the narrow exceptions created in 7 U.S.C. § 5940 [of the Agricultural Act of 2014]."  Id. at p. 5.

In his reply brief, Mr. White Plume claims the government misses the limited nature of his Rule 60(b) motion.

> Whether and where Mr. White Plume can legally cultivate industrial hemp if the injunction is lifted is not currently a question before this Court.  And to be clear, Mr. White Plume's request for Rule 60(b) relief does not ask this Court for a declaratory judgment that Mr. White Plume is permitted to grow industrial hemp on the Pine Ridge Indian Reservation.  Nor does the Court need to reach the broader issue of whether cultivation of industrial hemp on the Pine Ridge Indian Reservation is legal as a general matter.

(Docket 137 at p. 3).  Mr. White Plume contends "[t]he only question properly before the Court is whether a decade-old injunction targeting Mr. White Plume—the only one of its kind in history—can properly stand given the recent

legislative and executive action that have altered the conditions under which the injunction was issued." Id. at p. 2. Mr. White Plume and the Oglala Sioux Tribe ("OST"), in its *amicus curiae* brief, alternatively urge the court to rule they are entitled to the same rights as the States and the citizens of those States to engage in industrial hemp production under the Agricultural Act of 2014. (Dockets 137 at p. 3 n. 3 & 141 at pp. 8-10).

A motion for relief from a judgment must be brought "within a reasonable time." Fed. R. Civ. P. 60(c)(1). "What constitutes a reasonable time is dependent on the particular facts of the case in question and is reviewed for abuse of discretion." Watkins v. Lundell, 169 F.3d 540, 544 (8th Cir. 1999).

The court looks to a number of factors to resolve the timeliness issue. First, the Attorney General of the United States issued two critically relevant memoranda in 2013 and 2014. Those are the memorandum from Deputy Attorney General James M. Cole directed to all United States Attorneys and providing "Guidance Regarding Marijuana Enforcement," August 29, 2013 ("Cole Memorandum") and the memorandum from Monty Wilkinson, Director of the Executive Office for United States Attorneys, directed to all United States Attorneys, First Assistant United States Attorneys, Criminal Chiefs, Appellate Chiefs, OCDETF Coordinators and Tribal Liaisons entitled "Policy Statement Regarding Marijuana Issues in Indian Country," October 28, 2014 ("Wilkinson Memorandum").

Following legalization of marijuana in Colorado and Washington, the Cole Memorandum outlined eight priorities for Department of Justice enforcement of the CSA against conduct associated with the substance.

- Preventing the distribution of marijuana to minors;

- Preventing revenue from the sale of marijuana from going to criminal enterprises, gangs, and cartels;

- Preventing the diversion of marijuana from states where it is legal under state law in some form to other states;

- Preventing state-authorized marijuana activity from being used as a cover or pretext for the trafficking of other illegal drugs or other illegal activity;

- Preventing violence and the use of firearms in the cultivation and distribution of marijuana;

- Preventing drugged driving and the exacerbation of other adverse public health consequences associated with marijuana use;

- Preventing the growing of marijuana on public lands and the attendant public safety and environmental dangers posed by marijuana production on public lands; and

- Preventing marijuana possession or use on federal property.

Cole Memorandum at pp. 1-2. The Cole Memorandum acknowledged that "[i]n jurisdictions that have enacted laws legalizing marijuana in some form and that have also implemented strong and effective regulatory and enforcement systems to control the cultivation, distribution, sale, and possession of marijuana, conduct in compliance with those laws and regulations is less likely to threaten the federal priorities set forth above." Id. at p. 3.

9

The Wilkinson Memorandum specifically addressed drug enforcement in Indian country.  "With a number of states legalizing marijuana for use and production, some tribes have requested guidance on the enforcement of the Controlled Substances Act . . . on tribal lands by the United States Attorneys' offices."  Wilkinson Memorandum at pp. 1-2.  After discussing the Cole Memorandum priorities, the Wilkinson Memorandum stated:

> Indian Country includes numerous reservations and tribal lands with diverse sovereign governments, many of which traverse state borders and federal districts.  Given this, the United States Attorneys recognize that effective federal law enforcement in Indian Country, including marijuana enforcement, requires consultation with our tribal partners in the districts and flexibility to confront the particular, yet sometimes divergent, public safety issues that can exist on any single reservation. . . . The eight priorities in the Cole Memorandum will guide United States Attorneys' marijuana enforcement efforts in Indian Country, including in the event that sovereign Indian Nations seek to legalize the cultivation or use of marijuana in Indian Country.  Consistent with the Attorney General's 2010 Indian Country Initiative, in evaluating marijuana enforcement activities in Indian Country, each United States Attorney should consult with the affected tribes on a government-to-government basis.

Id. at pp. 2-3.

The second major factor considered in judging the timeliness of Mr. White Plume's motion was the enactment of the Agricultural Act of 2014.  Section 5940 of the Act is subtitled "Legitimacy of industrial hemp research."  7 U.S.C. § 5940.  That section permits the cultivation of industrial hemp under certain conditions:

> Notwithstanding the Controlled Substances Act (21 U.S.C. 801 et seq.), the Safe and Drug-Free Schools and Communities Act (20

> U.S.C. 7101 et seq.), chapter 81 of Title 41, or any other Federal law, an institution of higher education (as defined in section 1001 of Title 20) or a State department of agriculture may grow or cultivate industrial hemp if--
>
> (1) the industrial hemp is grown or cultivated for purposes of research conducted under an agricultural pilot program or other agricultural or academic research; and
>
> (2) the growing or cultivating of industrial hemp is allowed under the laws of the State in which such institution of higher education or State department of agriculture is located and such research occurs.

Id. § 5940(a). The Act defines "industrial hemp" as "the plant Cannabis sativa L. and any part of such plant, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." Id. § 5940(b)(2).

The third major factor concerning the timeliness issue is the May 7, 2015, letter from OST President John Yellow Bird Steele to the Acting United States Attorney for the District of South Dakota. (Docket 141-1). President Yellow Bird Steele sought the assistance of the Acting United States Attorney to permit Mr. White Plume and the other members of the Oglala Sioux Tribe on the Pine Ridge Indian Reservation to cultivate industrial hemp in accordance with OST Ordinance No. 98-27.[9] Id. at p. 1. The letter pointed out "that the State of

---

[9]The 1998 ordinance criminalized the manufacture, cultivation, sale or distribution of marijuana. (Docket 141-2 at p. 2). The ordinance specifically authorized the cultivation and harvest of industrial hemp by OST members under certain limited conditions. Id. at pp. 2-3. In 2004, the court found that neither the CSA nor the Fort Laramie Treaty of 1868 permitted the tribe to grow cannabis. (Docket 98 at p. 9).

11

Oregon has issued commercial hemp licenses to at least one of its citizens and, if the White Plume Hemp Injunction is not promptly lifted, the Oglala Sioux Tribe will require a formal response from [the] United States Department of Justice explaining why our members of the Oglala Sioux Tribe are not being treated favorably [sic] than a citizen of the State of Oregon who is similarly situated." Id. at p. 2.  President Yellow Bird Steele sought a response by the end of May to his call for assistance.  Id.  According to the OST *amicus* brief, it does not appear the Acting United States Attorney responded to the letter.  (Docket 141 at pp. 7-10).

The forth major factor on the timeliness issue is the fact that Mr. White Plume filed his Rule 60(b) motion on July 30, 2015.  (Docket 124).  This was only sixty days after the response deadline of the letter from the OST President to the Acting United States Attorney for the District of South Dakota.

The court finds these factors support a finding that the motion was brought "within a reasonable time" following the culmination of these major events.  Fed. R. Civ. P. 60(c)(1); Watkins, 169 F.3d at 544.  The court finds Mr. White Plume's Rule 60(b) motion was timely filed.  Id.

Rule 60(b)(5) "permits a party to obtain relief from a judgment or order if, among other things, "applying [the judgment or order] prospectively is no longer equitable."  Horne v. Flores, 557 U.S. 433, 447 (2009) (citing Fed. R. Civ. P. 60(b)(5)).  "Rule 60(b)(5) may not be used to challenge the legal conclusions on which a prior judgment or order rests, but the Rule provides a means by which a

party can ask a court to modify or vacate a judgment or order if a significant change either in factual conditions or in law renders continued enforcement detrimental to the public interest." Id. (internal quotation marks and citation omitted).  "The party seeking relief bears the burden of establishing that changed circumstances warrant relief, . . . but once a party carries this burden, a court abuses its discretion when it refuses to modify an injunction or consent decree in light of such changes." Id. (internal quotation marks and citations omitted).  "Rule 60(b)(5) serves a particularly important function in what [the court] termed 'institutional reform litigation.'  For one thing, injunctions issued in such cases often remain in force for many years, and the passage of time frequently brings about changed circumstances—changes in the nature of the underlying problem, changes in governing law or its interpretation by the courts, and new policy insights—that warrant reexamination of the original judgment." Id. at 447-48 (internal citation omitted).

"It goes without saying that federal courts must vigilantly enforce federal law and must not hesitate in awarding necessary relief.  But in recognition of the features of institutional reform decrees . . . courts must take a 'flexible approach' to Rule 60(b)(5) motions addressing such decrees." Id. at 450 (internal citation omitted).  "In applying this flexible approach, courts must remain attentive to the fact that 'federal-court decrees exceed appropriate limits if they are aimed at eliminating a condition that does not violate [federal law] or

13

does not flow from such a violation.'" Id. (citing Milliken v. Bradley, 433 U.S. 267, 282 (1977)).

"Because an injunction, 'whether right or wrong, is not subject to impeachment in its application to the conditions that existed at its making,' [a party] must identify changed circumstances that shift the equitable balance in [his] favor under Rule 60(b)(5)." Wells Fargo Bank, N.A. v. WMR e-PIN, LLC, 653 F.3d 702, 715 (8th Cir. 2011) (citing United States v. Swift & Co., 286 U.S. 106, 119 (1932)). "The fact that the rule allows relief if it is 'no longer equitable' for the judgment to have prospective application is not a substitute for an appeal. It does not allow relitigation of issues that have been resolved by the judgment. Instead it refers to some change in conditions that makes continued enforcement inequitable." Id. (citing 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2863, at 340 (2d ed. 1995)). "[F]ederal courts of equity [are granted] substantial flexibility to adapt their decrees to changes in the facts or law, particularly in institutional reform litigation, where the public interest is paramount." Smith v. Board of Education of Palestine-Wheatley School District, 769 F.3d 566, 572 (8th Cir. 2014).

The court finds there has been a significant shift in the legal landscape since 2004 which makes "continued enforcement" of the permanent injunction "detrimental to the public interest." Horne, 557 U.S. at 447. In making this declaration, the court declines the parties' invitation to re-litigate the initial soundness of the permanent injunction. Whether the Fort Laramie Treaty of

14

1868 should have protected Mr. White Plume from the injunction originally or whether the Oglala Sioux Tribe should be considered on equal footing with the States under the Agricultural Act of 2014 need not be resolved in the present motion.

What is material to the court's analysis is the shifting national focus on industrial hemp as a viable agricultural crop and the decision of the Attorney General of the United States to engage in a dialogue with the various tribes on the relationship between the CSA and the Agricultural Act of 2014.  The government did not challenge Mr. White Plume's assertion that "[w]ith the Agricultural Act of 2014, the Federal government joined the twenty-two states that have enacted legislation on industrial hemp."  (Docket 125 at p. 7) (reference omitted).  Nor did the government challenge the representation that seven states have ventured into the area of agricultural or academic research of industrial hemp.  Id. at p. 8 (reference omitted).

> Under these laws, researchers and commercial farmers are already growing industrial hemp. Several universities in Kentucky, including the University of Kentucky, are growing hemp to research the viability of certain types of hemp seed in Kentucky soil, cultivation for medical research, applications for cleaning tainted soil, and agricultural issues such as production cost.  These 2014 pilot projects were extremely successful, yielding substantial data about farming techniques and alternative uses for industrial hemp. Hundreds of applicants sought permits for the 2015 programs in Kentucky.  Oregon has also issued its first hemp farming permit. In both states, the DEA and the U.S. Attorney's Offices have neither disallowed hemp farming nor moved to confiscate or destroy the hemp crop.

Id. (references omitted).

The shifting legal landscape is also illustrated by the action of the 2016 South Dakota Legislature.  During this past legislative session, it considered House Bill No. 1054, a bill to authorize the production and sale of industrial hemp.[10]  A review of the proposed legislation suggests the Legislature was seeking to comply with the requirements of 7 U.S.C. § 5940 of the Agricultural Act of 2014.  House Bill No. 1054 was approved by the House of Representatives on a 57-11 vote but then was deferred to the 41st legislative day by the Senate Agriculture and Natural Resources Committee, effectively killing the bill for this year.

All of these factors constitute "changed circumstances—changes in the nature of the underlying problem, changes in governing law or its interpretation by the courts, and new policy insights—that warrant reexamination of the original judgment."  Horne, 557 U.S. at 447-48 (internal citation omitted).  The shift in this country in permitting marijuana and industrial hemp production are of paramount interest to the public.  Smith, 769 F.3d at 572.  These factual and legal changes "make[] continued enforcement inequitable."  Wells Fargo Bank, N.A., 653 F.3d at 715.  Mr. White Plume carried his burden under Rule 60(b)(5) of "establishing that changed circumstances warrant relief."  Horne, 557 U.S. at 447.  The court would abuse its discretion if "it refuse[d] to modify [the permanent] injunction . . . in light of [these] changes."  Id.

---

[10]The content and legislative history of House Bill No. 1054 can be found at http://legis.sd.gov/Legislative_Session/Bills/Bill.aspx?Bill=1054&Session=2016.

**ORDER**

Based on the above analysis, it is

ORDERED that Mr. White Plume's motion (Docket 124) is granted.

IT IS FURTHER ORDERED that the permanent injunction set out in the amended judgment of December 30, 2004 (Docket 101) is vacated as it relates to Alexander "Alex" White Plume.

IT IS FURTHER ORDERED that Mr. White Plume's motion for alternative relief (Docket 137 at p. 3 n.3) is denied without prejudice.

IT IS FURTHER ORDERED that this order does not authorize Mr. White Plume to cultivate industrial hemp or violate the Controlled Substances Act.

IT IS FURTHER ORDERED that this order does not resolve whether cultivation of industrial hemp on the Pine Ridge Indian Reservation is legal.

IT IS FURTHER ORDERED that this order does not resolve whether the Agricultural Act of 2014 authorizes cultivation of industrial hemp on the Pine Ridge Indian Reservation.

Dated March 28, 2016.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE